

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS

### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Marvin H. Brown, Jr.
Criminal District Attorney
Fort Worth, Texas

Dear Sir:

Opinion No. 0-3167
Re: Is a contract in which a
corporation agrees to sell
part of its physical prop-
erties which it uses in the
supply business to another
corporation transacting a
similar supply business and
agrees not to transact busi-
ness of the character sold
for a stipulated period with-
in a specified territory a
violation of the anti-trust
laws of Texas?

We have received your letter of recent date request-
ing our opinion upon the above stated question. The factual
background of your request is set forth in the following para-
graph of your letter:

"One of our local corporations has con-
tracted to sell part of its physical proper-
ties, which it uses in the supply business
to another corporation transacting a similar
supply business, and desires to cease the
transaction of that particular part of its
business now carried on with such equipment
and physical properties. As a part of the
contract, in order to secure the purchaser
in the acquisition of its good will, etc.,
it agrees not to transact business of the
character sold for a stipulated period with-
in a specified territory. I desire to sub-
mit to you for your advice the question of
whether or not such contract is in violation
of the Anti-trust Laws of the State of Texas."

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Marvin H. Brown, Jr., Page 2

Article 7426, Revised Civil Statutes of Texas, 1925, reads:

"A 'trust' is a combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons, or either two or more of them for any or all of the following purposes:

"1. To create, or which may tend to create or carry out, restrictions in trade or commerce or aids to commerce, or in the preparation of any product for market or transportation, or to create or carry out restrictions in the free pursuit of any business authorized or permitted by the laws of this State.

"2. To fix, maintain, increase or reduce the price of merchandise, produce, or commodities, or the cost of insurance, or of the preparation of any product for market or transportation.

"3. To prevent or lessen competition in the manufacture, making, transporation, sale or purchase of merchandise, produce or commodities, or the business of insurance, or to prevent or lessen competition in aids to commerce, or in the preparation of any product for market or transportation.

"4. To fix or maintain any standard or figure whereby the price of any article or commodity of merchandise, produce or commerce, or the cost of transportation, or insurance, or the preparation of any product for market or transportation, shall be in any manner affected, controlled or established.

"5. To make, enter into, maintain, execute or carry out any contract obligation or agreement by which the parties thereto bind, or have bound, themselves not to sell, dispose of, transport or to prepare for market or transportation any article or commodity, or to make any contract of insurance at a price below a common standard or figure, or by which they shall agree, in any manner, to keep the price of such article or commodity, or charge for transportation or insurance, or the cost of

Honorable Marvin H. Brown, Jr., Page 3

the preparation of any product for market or transportation, at a fixed or graded figure, or by which they shall, in any manner, affect or maintain the price of any commodity or article, or the cost of transportation or insurance, or the cost of the preparation of any product for market or transportation, between them or themselves and others, to preclude a free and unrestricted competition among themselves or others in the sale of transportation of any such article or commodity or business of transportation or insurance, or the preparation of any product for market or transportation, or by which they shall agree to pool, combine or unite any interest they may have in connection with the sale or purchase of any article or commodity, or charge for transportation or insurance, or charge for the preparation of any product for market or transportation, whereby its price or such charge might be in any manner affected.

"6. To regulate, fix or limit the output of any article or commodity which may be manufactured, mined, produced or sold, or the amount of insurance which may be undertaken or the amount of work that may be done in the preparation of any product for market or transportation.

"7. To abstain from engaging in or continuing business, or from the purchase or sale of merchandise, produce or commodities partially or entirely within this State, or any portion thereof."
(Underscoring ours)

We have underlined those sections of Article 7426, which appear to be in anyway applicable to the stated facts. From our study of your question, it appears that the decisions in civil suits are conclusive that Article 7426, supra, does not apply to the sale of the business and the good will thereof, accompanied by an obligation on the part of a seller not to resume business for a limited time at a specified place, where the purchaser is a single person, firm, corporation or association. The leading case by the Texas Supreme Court on this question is the case of Gates v. Hooper, 90 Tex. 563, 39 S. W. 1079, and it is treated as the leading case by many courts and text writers for the principle that there can be no "combination" unless two or more unite or associate "capital, skill, or acts" for one of the

Honorable Marvin H. Brown, Jr., Page 4

prohibited purposes, and that a restriction imposed by a single vendee is to be treated as lawful and therefore enforceable by the equitable arm of the law, despite the anti-trust statutes.

Justice Denman, writing for the Supreme Court in Gates v. Hooper, supra, says:

"* * * In order to constitute a trust, within the meaning of the statute, there must be a 'combination of capital, skill or acts by two or more.' 'Combination,' as here used, means union or association. If there be no union or association by two or more of their 'capital, skill or acts,' there can be no 'combination,' and hence no 'trust.' When we consider the purpose for which the 'combination' must be formed, to come within the statute, the essential meaning of the word 'combination,' and the fact that a punishment is prescribed for each day that the trust continues in existence, we are led to the conclusion that the union or association of 'capital, skill or acts' denounced is where the parties in the particular case designed the united co-operation of such agencies, which might have been otherwise independent and competing, for the accomplishment of one or more of such purposes. In the case stated in the petition there is no 'combination.' The plaintiff bought defendant's goods, together with the good will of his business, both of which were subjects of purchase and sale; and, in order to render the sale of the good will effectual, the seller agreed that he would not, for one year thereafter, do a like business in that town. This was but a kind of covenant or warranty that the purchaser should have the use and benefit of such good will during that year; for it is clear that, if the seller had immediately engaged in a like business at the same place, the purchaser would have had no benefit therefrom. By this transaction neither the capital, skill, nor acts of the parties were brought into any kind of union, association, or co-operative action. * * *."

Honorable Marvin H. Brown, Jr., Page 5

Reference to Sheppard's Southwestern Reporter Citations shows the Gates v. Hooper case to have been listed as authority in no less than forty-four civil cases to and including the pronouncement in Houston Credit Sales Co. v. English, Tex. Civ. App., 139 S. W. (2d) 163. No effort on the part of any court to overrule Gates v. Hooper has been found, though we have made exhaustive search.

In the case of Comer v. Burton-Lingo Co., 24 Tex. Civ. App. 251, 58 S. W. 969, the court writing upon a related question, had the following to say:

"The anti-trust law does not apply to
the sale of a business and the good will there-
of, accompanied by an obligation on the part
of the seller not to resume business for a
limited time at a specified place, where the
purchaser is a single person or firm. Gates
v. Hooper (Tex. Sup.) 39 S. W. 1079; Erwin v.
Hayden (Tex. Civ. App.) 43 S. W. 611. * * *."

For additional authorities see Langever v. United Advertising Corporation, 258 S. W. 856; Malakoff Gin Co., v. Riddlesberger, 133 S. W. 519; Ibid, Sup. Ct., 192 S. W. 530; Linen Service Corporation v. Myers, 128 S. W. (2d) 850; State v. Racine Sattley Co., 134 S. W. 400, and many others grouped in 28 Texas Digest 220-222.

Article 7427, Revised Civil Statutes of Texas, 1925, provides in part:

"A monopoly is a combination or consolida-
tion of two or more corporations when effected
in either of the following methods:

"* * *.

"2. Where any corporation acquires the
shares or certificates of stock or bonds, fran-
chise or other rights, or the physical properties
or any part thereof, of any other corporation or
corporations, for the purpose of preventing or
lessening, or where the effect of such acquisi-
tion tends to affect or lessen competition, wheth-
er such acquisition is accomplished directly or

through the instrumentality of trustees or otherwise." (Underscoring ours).

Although our appellate courts have never passed upon a contract similar to the one referred to in your letter, it is our opinion that it was not the intention of the Legislature, in enacting Article 7427, supra, to make it apply to such a contract. To violate said Article 7427, there must be a <u>combination or consolidation</u> of two or more corporations. Under the facts as submitted by you, there is no evidence of either a combination or a consolidation. This contract is nothing more than a contract of sale of the equipment and physical properties used in the transaction of a particular part or phase of the supply business. Ancillary to the sale of this equipment and physical properties, the seller, in order to secure the purchaser in the acquisition of its good will, agrees not to engage in that particular phase of the supply business for a stipulated period.

From 6 Ruling Case Law, p. 790, § 195, we quote as follows:

"From the tests laid down for determining the validity of such an agreement, it seems to follow that no conventional restraint of trade can be enforced, unless the covenant embodying it is merely ancillary to the main purpose of a lawful contract, and necessary to protect the covenantee in the enjoyment of the legitimate fruits of the contract, or to protect him from the dangers of an unjust use of those fruits by the other party. This statement of the rule implies that the contract must be one in which there is a main purpose, to which the covenant in restraint of trade is merely ancillary. * * *."

The restrictive agreement contained in the instant contract, being merely ancillary to the main purpose of the contract, to-wit: the sale of the equipment and physical properties used in connection with the transaction of a particular part or phase of the supply business, and necessary to protect the purchaser in the enjoyment of the legitimate fruits of the contract, is not, in our opinion, a violation of said Article 7427, supra.

There have been relatively few cases before our appellate courts construing the criminal law provisions of the anti-trust

statutes of this State. Although the general language employed in the Revised Civil Statutes is the same as that used in the Penal Code, and Article 7426, supra, is in exactly the same language as Article 1632 of the Penal Code, and Article 7427, supra, is in exactly the same language as Article 1633 of the Penal Code, they were enacted by the Legislature as separate bills, and the enactment appearing in the Civil Code became a part of the statutory law of this State at a subsequent time. See State v. Standard Oil Co., 130 Tex. 313, 107 S. W. (2d) 550, reversing Civ. App., 82 S. W. (2d) 402.

It will be recalled that the provisions of the Penal Code recently withstood a most aggressive attack leveled at the constitutionality thereof. In an able and elaborate opinion by the late Judge Christian of the Commission of the Court of Criminal Appeals this law was upheld. See Ex parte Tigner (Cr. App.) 132 S. W. (2d) 885. A motion for rehearing was filed, but was overruled; whereupon, the case was appealed to the Supreme Court of the United States and finally affirmed. Tigner v. State of Texas, 60 Sup. Ct. 879, 84 L. Ed. 756. Mr. Justice Frankfurter delivered the opinion of the Supreme Court and specifically overruled the case of Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 46 L. Ed. 659, 22 Sup. Ct. 431, long relied upon as making the penal provisions of our anti-trust laws inoperative.

As to whether the Court of Criminal Appeals would follow the Civil Courts on a state of facts similar to those involved in the Gates v. Hooper case, supra, it is not the prerogative of this department to anticipate or forecast such contingency. This is a field reserved exclusively for the Court of Criminal Appeals; however, in this connection, we point out the fact that while neither the Supreme Court and the various courts of Civil Appeals on the one hand, nor the Court of Criminal Appeals on the other is in any manner subordinate one to the other, it appears that respect will always be given to the decision of the Court which gives the first interpretation to language of a statute of such nature that it might be properly construed by either Court. See 11 Tex. Jur. 853; Redman v. State, 67 Tex. Cr. R. 374, 149 S. W. 670; Ex parte Mussett, 72 Tex. Cr. R. 487, 162 S. W. 846; Lossing v. Hughes, Tex. Civ. App. 244 S. W. 556, 561.

We therefore respectfully advise you that it is our opinion that the contract as outlined in your opinion request is not a violation of the provisions of the anti-trust laws of

the State of Texas.

Trusting that the foregoing fully answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED MAY 2, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

By ~~D. Burle Davis~~

D. Burle Davis
Assistant

DBD:RS


APPROVED
OPINION
COMMITTEE
BY BWT3
CHAIRMAN